UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAFAH DAWOOD,

    Plaintiff/Counter-Defendant,

v.

FIFTH THIRD BANK,                       Case No. 14-cv-12442
                                                   Honorable Gershwin A. Drain

    Defendant,

and

JPMORGAN CHASE BANK,

    Defendant/Counter-Plaintiff.

_____/

**OPINION AND ORDER GRANTING JPMORGAN CHASE BANK,
N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS [#30]**

**I. INTRODUCTION**

Defendant/Counter-Plaintiff JPMorgan Chase Bank, N.A. ("Chase") removed this action on June 23, 2014. *See* Dkt. No. 1. On August 1, 2014 Chase filed a Motion to Dismiss Plaintiff/Counter-Defendant Rafah Dawood's ("Dawood") First Amended Complaint. *See* Dkt. No. 10. The Court denied Chase's Motion to Dismiss because the Court found it was not presented with sufficient facts to determine whether Chase was a proper party in interest. *See Dawood v. Fifth Third Bank*, No. 14-cv-12442, 2014 WL 5307172 (E.D. Mich. Oct. 16, 2014). Chase subsequently filed an Answer to Dawood's First Amended Complaint, provided information to prove Chase was a proper party in interest, and filed a counterclaim seeking a

declaratory judgment that Chase is entitled to recover the entire amount of the Two-Party Check issued by Farmers Insurance ("Farmers"). *See* Dkt. No. 22.

Presently before the Court is Chase's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. No. 30. This matter is now fully briefed and the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the Motion on the briefs as submitted, and cancel the March 31, 2015 hearing scheduled for 10:00 a.m. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons discussed herein, the Court will **GRANT** Chase's Motion for Judgment on the Pleadings [#30].

## II. FACTUAL BACKGROUND

Rafah Dawood, and her husband, Weeam Dawood, were the owners of a home located at 6306 Branford Drive in West Bloomfield, Michigan. On December 30, 2010 a fire occurred at the residence resulting in the home's destruction. The home was insured against loss due to fire pursuant to a Farmers insurance policy ("the Policy"), which named Chase as the payee. At the time of the fire, the home was encumbered by two mortgages and a junior lien. The first mortgage on the home was held with Washington Mutual Bank ("WaMu"), and was refinanced on October 4, 2004 in the amount of $715,000.00. Chase issued a second mortgage on March 4, 2005, which was used to secure a home equity line of credit in the amount of $359,650. Additionally, IndyMac Bank ("IndyMac") held a junior lien, issued on February 16, 2005 in the amount of $176,400, which was also used to secure an equity line of credit.

Chase became the successor in interest to the mortgage held by WaMu, and on March 30, 2009 Chase assigned the $715,000 mortgage on the home to Deutsche Bank National Trust Company ("Deutsche Bank"). On January 14, 2013 the Federal Deposit Insurance Corporation ("FDIC") filed an assignment of the mortgage to Chase to correct a break in the chain of title.

On January 22, 2013, Chase discharged Dawood's mortgage for the home equity line of credit. Deutsche Bank sold the home as a foreclosure on May 14, 2013.

The crux of this dispute is centered on the insurance proceeds from the fire that destroyed Dawood's residence in December 2010. Following the fire, there was an insurance dispute between Dawood and Farmers, which resulted in settlement discussions in November of 2011. Following the settlement discussions, Dawood filed suit on November 8, 2012 against Farmers in Oakland County Circuit Court. Farmers filed a counter-claim on December 7, 2012.

On October 1, 2013, Dawood and Farmers entered into a Joint Stipulation ("2013 Joint Stipulation") in which Farmers agreed, amongst other terms, to immediately pay $175,000 for all of the contents claims involving the December 2010 fire in exchange for Dawood's release and discharge of Farmers of any and all future liability claims and demands. Farmers also indicated that it would pay either a negotiated settlement amount, or up to the full amount, of the lien on the property held by both Chase and IndyMac.

On February 14, 2014, Farmers issued a Two-Party Check to both Chase and Dawood in the amount of $596,775.49. Dawood asserts that she obtained an appropriate endorsement of the Two-Party Check by a representative of Chase. Dawood then deposited the check into a Fifth Third Bank account. Dawood and Chase dispute each other's entitlement to the funds from the Two-Party Check issued by Farmers. That dispute resulted in this lawsuit, which was initiated by Dawood in Wayne County Circuit Court on May 23, 2014.

### III. LAW & ANALYSIS

#### A. Legal Standard

Federal courts review motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) using the standards applicable to motions filed under Rule 12(b)(6). *See Wee Care Child Ctr., Inc. v. Lumpkin,* 680 F.3d 841, 846 (6th Cir. 2012). Though litigants employ these procedural mechanisms at different stages of the proceedings, the purpose of both motions is to test the legal sufficiency of a plaintiff's pleadings. Thus, as with Rule 12(b)(6) motions, a Rule 12(c) motion allows a court to make an assessment as to whether a plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly,* 550 U.S. at 557, 127 S.Ct. at 1965. Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965) (internal citations omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949. Therefore, to survive a

motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters,* 502 F.3d at 548 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964–65)) (internal citations and quotations omitted).

In addition to evaluating the sufficiency of the factual allegations within the four corners of a complaint, courts may consider any exhibits attached to the complaint, matters of public record, and exhibits attached to a defendant's 12(b)(6) motion, provided that the latter are referred to in the complaint and are central to the claims therein. *Bassett v. NCAA,* 528 F.3d 426, 430 (6th Cir.2008) (citing *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001)). In the present case, the Court has considered documents attached to Defendant's Motion, as they have been referred to in Plaintiff's First Amended Complaint and are central to the claims asserted therein.

### B. Legal Analysis

In Chase's Answer to Dawood's First Amended Complaint, Chase referenced, and attached as an exhibit, a Limited Power of Attorney ("LPOA") between itself and Deutsche Bank. *See* Dkt. No. 22-2. In the LPOA, the current holder of the subject mortgage, Deutsche Bank, authorizes Chase to act on Deutsche Bank's behalf for "[t]he full enforcement of and preservation of [Deutsche Bank's] interests in the Mortgage Notes . . . and in the proceeds thereof, by way of . . . pursuit of . . . hazard insurance[.]" *Id.*

Dawood concedes that "[t]he LPOA shows that Chase has standing in this case." Dkt. No. 39 at 5. Nonetheless, Dawood contends that Chase's Motion should not be granted because the LPOA "does not address or demonstrate why Chase can collect all the proceeds from the two party check." Dkt. No. 39 at 5. Dawood's contention ignores the fact that this Court's previous

ruling explained how and why Chase could collect the proceeds from the Two-Party Check if Chase was an appropriate party in interest. *See Dawood v. Fifth Third Bank*, No. 14-cv-12442, 2014 WL 5307172, at *3-5 (E.D. Mich. Oct. 16, 2014). Thus, by admitting Chase has standing, Dawood has resolved the only remaining issue in this case.

When the Court denied Chase's Motion to Dismiss, the Court found that Chase was an intended beneficiary of the 2013 Joint Stipulation between Dawood and Farmers. *See Dawood*, 2014 WL 5307172, at *3 ("It is undisputed that at the time of the 2013 Joint Stipulation, Defendant Chase possessed a lien on Plaintiff's property; and that Plaintiff and Farmers Insurance agreed that Farmers Insurance would pay a negotiated settlement amount to Defendant Chase for Chase's lien held against Plaintiff's property.") (citations omitted).

The Court noted that Chase assigned the Mortgage to Deutsche Bank in March of 2009, and discharged its lien on Dawood's property in January of 2013. *Id.* at *4. The Court further noted that Chase presented an argument in which it could "retain a right to the insurance proceeds because Deutsche Bank, as the Trustee, could merely be acting as the agent for Defendant Chase." *Id.* (citing *Ford Motor Credit Co. v. Odom*, No. 266770, 2007 WL 2214444, at *4 (Mich. Ct. App. Aug. 2, 2007) (citing *Greer v. O'Dell*, 305 F.3d 1297, 1299 (11th Cir. 2002)); *CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC,* 610 F.3d 497 501-502 (7th Cir. 2010)).

Nevertheless, the Court ultimately denied Chase's Motion to Dismiss because the Court found it did not have adequate facts to completely analyze the relationship between Chase and Deutsche Bank. *Dawood*, 2014 WL 5307172, at *5; *see also id.* at *4 ("[I]f Defendant Chase transferred all of its rights to Deutsche Bank, Plaintiff would be correct in her assertion that

Defendant Chase is unable to be a party in interest, as Deutsche Bank would be the proper party in interest in such a situation.").

Now, in light of Chase's submission of the LPOA, Dawood no longer disputes that Chase has standing. Accordingly, Dawood has conceded the only disputed issue remaining in the case. The Court has found that Chase was an intended beneficiary to the 2013 Joint Stipulation Agreement, and that, if Chase has standing, Chase could retain a right to the insurance proceeds. *Dawood*, 2014 WL 5307172, at *4-5. Now that it is undisputed Chase has standing in this case, the Court will **GRANT** Chase's Motion.

To be clear, in resolving Chase's Motion to Dismiss, the Court found that either two entities had rights to the insurance proceeds at issue: Chase or Deutshce Bank. If Chase didn't have rights to the proceeds, Deutsche Bank would have had rights to the proceeds. In either scenario, Rafah Dawood would *not* have a claim to the insurance proceeds at issue. This is the case because Rafah Dawood's claim to the disputed funds is barred by the 2013 Joint Stipulation Agreement. *See* Dkt. No. 10-11.

When Plaintiff secured her mortgage, Plaintiff agreed as the borrower to "absolutely and irrevocably" assign to her lender all of her rights to "any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise)," and "any and all funds received or receivable in connection with any damage to such property, resulting from any cause or cause whatsoever." Dkt. No. 12-4 at 6. Plaintiff later entered into a settlement agreement with Farmers, in connection with damage to the property resulting from a fire. *See* Dkt. No. 10-11 (2013 Joint Stipulation Between Plaintiff and Farmers Insurance); Dkt. No. 10-12 (State Court Dismissal as a Result of the 2013 Joint Stipulation).

A review of the 2013 Joint Stipulation from the Wayne County Circuit Court indicates that the Joint Stipulation bars Dawood's claims to the disputed proceeds. "In ascertaining the meaning of a contract, . . . the words used in the contract [are given] their plain and ordinary meaning that would be apparent to a reader of the instrument." *Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*, No. 11-13101, 2013 WL 5954426, at *4 (E.D. Mich. Nov. 7, 2013) (quoting *Rory v. Cont'l Ins. Co.,* 473 Mich. 457, 703 N.W.2d 23, at 28 (Mich. 2005)).

Looking at the plain language of the stipulated agreement, on October 13, 2013, Dawood and Farmers entered into an agreement whereupon Farmers agreed that it would "immediately, not later than seven (7) days of the date hereof, issue payment to Rafah Dawood and her attorney, Yaldo Law, PLLC, in the amount of One Hundred Seventy-Five Thousand Dollars ($175,000.00) *as payment in full* for all contents claims." Dkt. No. 10-11 at ¶ 1 (emphasis added).

The parties also agreed that Farmers Insurance would pay a negotiated settlement amount or up to the full amount of the lien held against the property by Chase. *See* Dkt. No. 10-11 at ¶ 2; *see also id.* at ¶ 4 ("Plaintiff, Rafah Dawood, agrees to allow Farmers Insurance Exchange to join the identified holders on the insurance contract, Chase Home Finance, LLC . . . (*or their appropriate successors in interest*), as additional parties necessary for resolution of this case in the pending action.") (emphasis added). Finally, and notably, the agreement indicated:

> Rafah and Weamm Dawood ("Dawoods") release and discharge Farmers Insurance Exchange of and from *any and all* liability, claims, demands, controversies, damages, actions, and causes of action, whether at law or in equity, which the Dawoods, individually or in any other capacity, their heirs, executors, administrators, insurers, successors, and assigns can, shall or may have by reason of *or in any way resulting from a fire loss* which occurred on or about December 30, 2010.

*Id.* at ¶ 7 (emphases added).

Chase asserts that the plain language of this agreement bars Dawood's claim for the money issued by Farmers on February 14, 2014, because the 2013 Joint Stipulation expressly limits Dawood's right to recovery to the $175,000 settlement check that was agreed upon in the 2013 Joint Stipulation. *See* Dkt. No. 10 at 10. Dawood disagrees and argues that "she did not waive her rights to the check at issue as a result of the Joint Stipulation because [she] only agreed to take $175,000 for the contents and did not waive her rights to any structural proceeds that may remain after the claim of Chase as mortgagee." Dkt. No. 12 at 11.

After reading Dawood's interpretation of the stipulated agreement, the Court finds nothing in the agreement that supports Dawood's position that there is a distinction between the "structural proceeds" and "contents claims." Dawood argues that in Paragraph 7 of the stipulated agreement she only agreed to release Farmers Insurance "from any other claims against it as a result of the fire and not the distribution of the structural proceeds to its proper owner." Dkt. No. 12 at 11. This interpretation cannot be squared with unambiguous language of the agreement, where Dawood agrees to release Farmers "from *any and all* liability . . . by reason of or *in any way resulting from a fire loss* which occurred on or about December 30, 2010." Dkt. No. 10-11 at ¶ 7 (emphases added).

Furthermore, when Dawood secured her mortgage, Dawood agreed as the borrower to "absolutely and irrevocably" assign to her lender all of her rights to funds, such as the insurance proceeds, "in connection with any damage to such property, resulting from any cause or cause whatsoever." Dkt. No. 12-4 at 6. Accordingly, per both the plain language of the 2013 Stipulation Order and Dawood's mortgage, Dawood is not entitled to the negotiated settlement proceeds between Farmers and Chase. *See* Dkt. No. 10-11 at ¶ 2; Dkt. No. 12-4 at 6; *see also Cochran v. Ernst & Young*, 758 F. Supp. 1548, 1555 (E.D. Mich. 1991) ("[A]ny consideration,

however slight, is legally sufficient to support a promise [and] in Michigan, a release from liability requires only nominal consideration."); *Pittsburgh Tube Co. v. Tri-Blend, Inc.*, 185 Mich. App. 581, 586, 463 N.W.2d 161 (1990).

Dawood also attempts to argue that Chase was divested of its third party beneficiary status because the Two-Party Check was issued by Farmers to both Dawood and Chase. *See* Dkt. No. 39. This argument is unavailing. In Dawood's Response, she "[a]ttache[s] as Exhibit B [] an email . . . between Farmers' attorney . . . and Dawood's former attorney . . . where they both divested Chase of its right as a third party beneficiary to the monies." Dkt. No. 39 at 6. After reviewing the document, the Court finds that this is not the case.

The email provided by Dawood only indicates *why* Farmers issued a check to both Dawood and Chase. Though all of the communications have not been disclosed, it appears that Farmers issued the check to both Dawood and Chase in an attempt to absolve itself of any potential liability in light of Dawood's objection to Farmers issuing the check to Chase as a result of the 2013 Joint Stipulation. *See* Dkt. No. 39-3 at 1("Farmers has not issued payment to Chase as a result of your apparent objection to the settlement of their claim [] based on your client's recent revelation the property was sold at sheriff's sale.").

While Dawood asserts that the email shows the "divesture of Chase of monies," this Court finds that the email only shows that Farmers issued the check to both Dawood and Chase in order to allow this Court to determine the Parties' relative rights to the funds. *See id.* ("Because you are objecting to the Chase payment and now believe your client has a claim or interest in the check to be issued to Chase, I have instructed Farmers not to issue the check. This now appears to be a dispute between Ms. Dawood and Chase. If you file suit against Chase,

Farmers can deposit the money with the court (interplead), or Farmers can issue the payment as a two party check naming both Chase and Ms. Dawood.").

In sum, Chase maintains its interest in the Two-Party Check. The only party whose interest has been severed is Rafah Dawood's. Dawood's interest was lost as a result of the 2013 Joint Stipulation in which Dawood relinquished her claim to the proceeds of the Two-Party Check. Because Chase has standing in this case, Chase is entitled to judgment on the pleadings in its favor.

### IV. CONCLUSION

For the reasons discussed, the Court **GRANTS** Chase's Motion for Judgment on the Pleadings.

Rafah Dawood's First Amended Complaint is **HEREBY DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 2201, and in resolution of Count VI of Chase's Counterclaim, this Court **HEREBY DECLARES** that (1) Defendant Chase has the right to collect all of the disputed proceeds at issue, and (2) Rafah Dawood has no right to the disputed proceeds.

Accordingly, the Court **HEREBY ORDERS** Defendant Fifth-Third Bank to tender the entirety of the disputed proceeds to Defendant Chase.

This Opinion and Order resolves all pending claims and counterclaims by and between the Parties and closes the case.

SO ORDERED.

Dated: February 23, 2015

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge